Case No. 14-1167, Hospital of Barstow, Inc., due in business as Barstow Community Hospital Petitioner, the National Labor Relations Board. Ms. Cassetta for the Petitioner, Ms. Sheehy for the Respondent. Good morning, Your Honors. May it please the Court, Gaitlin Cassetta, appearing on behalf of Barstow Hospital, Inc., doing business as Barstow Community Hospital. There are three reasons why this Court should vacate the Board's order in the underlying case here. And the first, and the one I want to focus on the most during oral argument today, is that the certification of representative that was issued by the regional director in this case is not a valid certification under the precedents that the Board brought to this Court's attention on Friday of last week, specifically SS Mystic and UC Health. And the reason why that's true is that this case was conducted pursuant to a consent election agreement, which rests with the regional director, final plenary authority to issue a ruling in the certification in other R case matters. And that distinguishes the case from SS Mystic and UC Health and puts it squarely in line with Laurel Bay. So for that reason, primarily, this case, the order should be vacated. But beyond that, there are also issues with the Board's findings. The Board erred when it found that there was no new relations agreement that existed here and that the party's desire to defer to arbitration was not honored. And the Board also erred when it made its findings of bad faith, specifically that the hospital's asking the union to submit all of its proposals before the hospital would respond was bad faith bargaining. And also that the declaration of impasse over the use of assignment despite objection forms was bad faith bargaining. So I'd like to take you first to the question of the certification, because obviously that would be the controlling issue here. As you all probably know, this court recently issued two decisions, one in UC Health and one in SS Mystic, their partner cases. Those followed from a decision from this court in 2009 in Laurel Bay Healthcare. In Laurel Bay, this court found that a delegation of the Board's authority made when the Board had four members to only two members of the Board was unlawful because of the fact that the Board is required to have a consistent three-member quorum. And this case, this court then further distinguished, or maybe narrowed, the grounds upon which Laurel Bay should be applied on a going forward basis in UC Healthcare. And in UC Healthcare, this court said, what we were concerned about in Laurel Bay Healthcare was final plenary authority. Delegations of final plenary authority to a delegee panel by the Board that remain in effect when the Board loses quorum. In the case at hand, that is precisely what has happened. I'd point you first to the Consent Election Agreement, because that's really where the difference between this case and the two cases in SS Mystic and UC Health arises. And that is in the appendix. It's on page one, it begins on 176, but the language that's important for these purposes is on page 179. In paragraph 15 of the Consent Election Agreement signed by the parties, the agreement, the Consent Election Agreement states, finality of regional director's decision. All rulings and determinations made by the regional director will be final, with the same force and effect in that case as if issued by the Board. And this reading of the Consent Election Agreement is further clarified by the Board's regulations, CFR 101.28, and we'll certainly raise this in our response to the supplemental authority that was submitted by the Board, but that just happened on Friday. Yes, so 101.28 describes the Board's position on the difference between the Consent Election Agreements and Stipulated Election Agreements, and the elections in SS Mystic and UC Health were Stipulated Election Agreements. That CFR, that regulation says, Consent Election Agreements include final regional director determinations of post-election disputes, and sometimes also pre-election disputes, whereas a Stipulated Election Agreement allows for the regulation for discretionary board review. And that was the difference relied upon by this court to distinguish UC Health Care and SS Mystic from Laurel Bay. This case falls squarely under Laurel Bay. If we look at the language of the decision in UC Health, we have this court saying just in language of the statute, reinforced by principles of agency law, foreclosed the Board's effort in Laurel Bay to delegate its plenary final authority when it had no quorum. A delegated panel wielding the Board's plenary final authority speaks on the Board's behalf and in its place. Similarly, in UC Health, the court said that this court was concerned with those delegations specifically, those delegations of final authority. That's precisely what we have here, and under the clear language of UC Health, combined with this court's decision in Laurel Bay, there's no reason why this order can stand. There is a problem with the Board's authority, there is a problem with this delegation, and the case has to go back. The order has to be vacated and the certification of representative must be vacated. The Board will argue to you that we have waived our right to make this argument because we did not test certification. That puts this case in a slightly different procedural posture than SS Mystic and UC Health, but not one that should matter to this court. What we have here is a controlling question about the Board's authority to act, in this case with finality through the regional director. That has been found to be a subject on which a party does not waive an argument, and that is a subject upon which the court should look at this certification and find that it is invalid based on the clear ruling in UC Health. I'm not sure I follow the distinction you're drawing between UC Health and SSC on one hand and this case on the other, based on this paragraph 15 finality of regional director. So if, in this case, the agency had done what it did in UC Health and SSC and said that we're reaching the conclusion that notwithstanding Laurel Bay, the regional director did have authority to act, even though the Board had lapsed below a quorum at the time that the regional director acted. So if they had done that, then why would this case be any different than those two? This case is different because the Board's rationale, well the Board asked for Chevron deference I think in UC Health care, and the rationale followed by the court in applying Chevron deference was the agency is entitled to deference for its interpretation there because the agency did not have the regional director's exercising final plenary authority. That made it a reasonable interpretation. The court distinguished from Laurel Bay and said an interpretation whereby final plenary authority is being delegated is a delegation that violates the statute. And so that's why the Board has not made any of those arguments, to be clear in this case. They've simply said we waive the argument and they've not asked you for Chevron deference. They've not told you why there should be any difference in this case from Laurel Bay. But it just seems a little bit odd to rest on and put to one side the notion that the Board hasn't said, asked for Chevron deference or given the interpretation that it did in UC Health and SSC that would attract the possibility of Chevron deference. But it seems a little bit odd to say that there's a talismanic distinction between this case and those cases based on the finality of the regional director's decisions when the reason why you have this supposed finality of the regional director's decisions is because of something that you agreed to do, which is that the Board didn't have anything to do with that. You and the union entered into an agreement that said, you know, for our purposes, whatever those may be, they may be our own convenience, we decided that the regional director's authority is going to be final. We agreed to enter into that kind of agreement on the basis of the constitutional authority or the authority of the regional director to act, which is a subject of contention now. That was not at the time. If you look at the court's decision, recent decision in UC Health, they encounter the same argument and reject it. The Board says, listen, these two parties came together, they signed a stipulated election agreement, they agreed that they would abide by the provisions therein. That's not sufficient to waive this argument now, which has to do with the Board's very authority to act. I take your point about waiver. I guess I'm not making a waiver point so much. I'm just saying that it seems a little bit odd to draw a distinction between those circumstances and this one that's based on finality. That's based on finality of the regional director's authority when the reason we have the supposed finality here is because of something that you and the union entered into an agreement to effect. I'm not necessarily saying there's a waiver. I'm just saying that I don't know that there could be a fundamental distinction between this case and those other cases when it's not something in the law that makes the regional director's authority here different from the regional director's authority in those cases. It's something that arose by way of contract. Well, two responses. I think there is something in the law that creates a distinction, and that's the decision in UC Health. There's also a regulation that creates the distinction. It's a separate regulation. 101.2AA is not the same as the 1961 delegation of authority that the board relied upon in the other cases. So there are distinctions in the law. And I'd also just, the timeline here is important because you have a consent. We drew the distinction as your first point, right? I mean, our prior case drew the distinction. Yes. Yes, it absolutely did. The precedent is very clear that the distinction is upon the grounds of whether the authority is final and plenary. I see my time is about to expire. No, you can keep going because I have an unrelated question. Did you want to say something more No, I think I've made myself pretty clear on why I think it's a very clearly unreliable certification and the case needs to go back under UC Health, excuse me. If we were to disagree with you about that and get to the merits on the negotiating expenses, how do you distinguish this court's decision in Fallbrook? There are a couple ways in which this case is distinguishable from Fallbrook. Material distinctions. Yes. I think that there are meaningful, significant distinctions between the two cases. Primarily, there are differences in the record. There was also a finding by the board that there was a path of obstructionist behavior in Fallbrook that's not present here. And you also have the board acting in an additionally arbitrary manner because they rely here on the period of time when these alleged bad faith bargaining actions came up. The same two-member panel didn't rely on that reasoning in Fallbrook Health. It's as though they've supplemented the record here, trumped it up, because they knew it wasn't sufficient on its own to support the award of negotiating expenses. The board can't do that. That's arbitrary and capricious and that's one of the reasons why it's distinguishable. Do you have any other questions? Okay, thank you. Thank you. We'll hear from the board. Good morning, Your Honors. Barbara Sheehy for the National Labor Relations Board. I guess we'll turn first to the certification. It's accurate. We submitted a 28-J on Friday drawing this Court's attention to UC Health and SSE Mystic simply as a matter of those cases were cited in our brief. I forget exactly what page it was on. It's in the 28-J. But not to open the door now to talk about things that weren't even brief, talking about consent elections and stipulated election agreements. That being said, I think Judge Trinovason brings up exactly the point that the board is still contesting in other cases outside of the circuit having to do with consent elections being very different than a stipulated election. The consent election, as Your Honor pointed out, is a voluntary contract that the parties entered into that under the regulations, if you execute this type of election agreement, you agree, both parties agree, that the regional director will have final say in terms of the objections to the election. So I think that it's very significant. Maybe I'm missing something. Our prior case drew a distinction between the final authority being a problem and the non-final authority. Your Honor is accurate. In UC Health there is that. But it wasn't in the context of analyzing a consent election agreement and what does that mean. What does that mean to enter into a voluntary contract to recognize that this agency official will have final say in terms of the election versus... That's really a waiver point, right? But I thought we said this kind of objection couldn't be waived. I'm not certain that we're making... We do make a waiver argument and I'll get back to that because I actually... How is this different from a waiver argument? It's not that they waived it. They voluntarily entered into an agreement. There wasn't a right that they waived. They entered into an election agreement to hold the election under the context of the regional director having the final say. So it's a voluntary recognition, I guess, that this is how the election is going to play out. In terms of the waiver, that is a different type of waiver and that's what we actually briefed. But if they... How is it different from a waiver? Because if they voluntarily enter into an agreement to have the election conducted under this regional director who they voluntarily agree will have final authority. But then they have a claim. Then the claim is, well, this person to which, yes, we voluntarily agreed to have this person conduct the election, but it turns out that this person was invalidly carrying out the responsibilities of regional directorship because they were carrying out those responsibilities at a time when the board just didn't have a quorum. And then you have... So they have that argument and then you have to have a response to that as well. You can't make that argument because you entered into this contract, but that just sounds like a waiver argument. And whether... I mean, maybe it is semantics. Whether it's waiver or forfeiture or they voluntarily recognize that this, that's... But I think the problem is it turns out to be more than semantics because if it's waiver, forfeiture, voluntary agreement, they all sound similar to me. Sure. But in UC Health and SSC, we did say that this is the type of argument because it goes to the structure of the agency, that that's just not waivable. It doesn't matter what's happened before. If the party just brings it up to us, then we resolve that issue because it is the sort of claim that we look at regardless of what has happened leading up to this point. And then I guess I would fall back then on what we briefed, which was this is... There is the other, aside from the consent election, there's the other issue of waiver that we briefed that once you... So this puts it in a very different procedural posture from UC Health and SSC. Once an employer recognizes a union and begins to bargain, and then two to three years later decides to attack a certification on the basis of after having signed an agreement to say we're not going to contest, and then later contesting that, that's a very different thing. So that's also a waiver argument? That's absolutely a waiver argument. It's a different type of... I agree that it's a different waiver argument, but it is a waiver whether the language in UC Health and SSC that deals with waiver slash forfeiture arguments and says, look, yes, there's waiver slash forfeiture arguments that generally apply. It generally is a good idea to raise things before the agency. That's usually the normal course and there's all sorts of salutary reasons why that's in effect. That just doesn't apply to this kind of claim. This kind of claim can come up regardless of what's happened before. And I would argue that neither this court in UC Mystic nor in UC Health and SSC Mystic addressed the specific type of waiver they have here. You can understand that the waiver is quite different, right, in that if you're testing the certification and the board is coming forward with an argument that was rejected, that you have waived your right to contest the certification, that's a very different thing than having, let's suppose this... Do you know why, can I ask you this question? Do you know why the UC Health and SSC Mystic were on the books, the board decisions were on the books at the time that the board decided this case? Am I remembering the timeline correctly? I'm sorry, that the... That the board decisions in UC Health and SSC Mystic had been handed down... I'm sorry, the board decisions? I thought you meant this court decision. No, no, the board decisions. Yeah, yeah, I, you know, I don't, I think so. I'm not positive. Well, it's just interesting to me that the board in those cases issued a determination as to the merits of whether the regional director continued to retain authority to which decision we accorded Chevron deference in UC Health and SSC, but then didn't do that here and just went straight to waiver. Is there, is there a reason that the, that the board would be reluctant to interpret the statute so that the regional director has the authority in this case that it found that the regional director did have in UC Health and SSC? You know, I don't know that that's in the DNL, and I don't think I'm in a position to, to say anything other than if the board felt clear that the case law, even out of the circuit, was clear, that if you do not test the certification, and you choose to bargain, and so I think they do cite board case law, and then also we've cited in the brief supplemental DC circuit case law, that says that that's the case, that the board, I'm going to assume that the board, when it wrote its decision, decided to go with what it viewed as federal case law. But usually, if you're going to issue a waiver, I mean, it just seems to me that an antecedent question to waiver is, is there a problem in the first place? You would usually say, there's not any problem with the regional director acting here anyways. You know, they would do what they did in UC Health and SSC, which is to say, well, I get what Laurel Bay says, I understand that, but we have discretion to construe the statute in a particular way, and the way of construing it is that, notwithstanding Laurel Bay, the regional director continues to have authority to act, notwithstanding the lapse of the board forum. Could have done that here, and then followed up with waiver, and then we would have what would seem to be the same issue as UC Health and SSC, but in the absence of a board interpretation of the statute, we can't, I don't think we can do what UC Health and SSC did, which is to give Chevron deference to an interpretation that's just not there this time. But I don't think you have the board decision in order here, relying on the consent election agreement, you don't have anything, like that you have the board saying that you have not tested the certification, and you can't. And this is sort of, if you play that out to say to the natural course of events, let's suppose that this, after this election, you actually had a fruitful negotiation session that resulted in a collective bargaining agreement. You can understand that in that case, the employer couldn't, that the board would have a policy interest in saying, you've waived your right at this point to not only undo that but go after certification. That's a policy argument, it's a good one, but it's not one that necessarily overcomes our doctrine that says these kinds of claims can always be raised, or usually be raised regardless of what happened before, because it's so important to ensure that the structure of the agency passes legal muster. And I would say that there are the cases that we do, we cite cases in our brief that recognize that under certain circumstances, constitutional claims can be waived under a certain set of circumstances. We cited the ones involving the... Well, we said in the UC Health that this is not one of them. Right, and that wasn't, and I guess our position is that this is a different type of situation. I understand your honor completely. Can I ask one other question about the regional director? Sure. This might be way beyond this case, but I'm curious. The regional director is appointed and removable by whom? The general counsel, right? Yes. Yes, the board has delegated to the general counsel. I read, and correct me if you know, that the general counsel can't remove the regional director without the consent of the board. Do you know if that's true or not? I'm sorry, I don't. If that is true, which I read, the regional director, during the period that the board is incapacitated here, is operating as a principal officer, which is a separate constitutional problem with the regional director, which is because it's not appointed by the president with the advice and consent of the senate. Right, and I honestly couldn't speak to that, but I would say that it is true. I just threw that out there as a separate problem with the regional directors in this period. Right, and it's possible that there's, and I don't know, but a lot of the authorities of the board are delegated to certain officers. If the board has delegated, for instance, and I don't know if this is true, if the board has delegated, for instance, to the general counsel to appoint and remove, it's also possible that there's a super mean delegation that says... Right, if there were plenary authority to appoint and remove, I would agree. I read that this had removed subject to the approval of the board. If there's no board in place, then the general counsel can't remove the regional director, and if the regional director can't be removed, then the regional director is operating as a principal officer, but hasn't been appointed consistent with what principal officers need to be validly appointed. Right. A separate problem beyond this case, but it occurred to me when I read all this. It's an interesting question, and I'm sorry, I don't know. On this, just to follow up on the, not the principal officer issue, but on the regional director question that has been teed up, what would we do if we concluded that the waiver issue that you raise is subject to the same waiver disposition that we handed down in UC Health and SSC? So we say, well, this court has ruled that these sorts of objections can't be waived by conduct, and so it can always be raised. So then we have a situation in which this case, the objection has been raised, and we'd have to resolve it. Now, if, would we look at the merits of that? Would we send it back to the agency, as UC Health in a footnote suggested, or what is your view as to the proper disposition if we were to reach the conclusion that your waiver argument's no good because of UC Health and SSC? I would say that given the court's reluctance to go on just what the board said, which is the waiver argument, and then perhaps wanting to hear from the board on whether the board felt as if, once told, you don't have a waiver argument here, now do you have, like what the court did in UC Health and SSC Mystic, I think that it could be remanded to the board then to say, do you have, board, please answer the question. You no longer have the waiver argument that you cited in terms of they've gone to bargaining, so the claim is preserved. Are you claiming Chevron deference now in this context? Even though the board could have done that, could have issued an interpretation in the first instance that would have teed up the Chevron question. I mean, you asked me what I, I mean, in the face of losing the case, absolutely, I would have said no, but it's also decided, however, if the court, those aren't the only examples that could happen, right? The court could decide, board, you're all wet on the waiver argument, it's the exact same thing as UC Health, but applying now the merits of UC Health and SSC Mystic, even that the Chevron deference that you could, the court could still conclude that even on the merits of UC Health and SSC Mystic, that the board's decision that the claim is not, I mean, I understand you'd prefer, I understand you'd prefer remand, and I guess I didn't mean to ask the question to ask what you prefer, I'm asking, based on our decisions and what you know about the way these things normally occur, what would be the appropriate course? Is there an argument that not that you prefer remand, but that that is, in fact, what should happen because of Chevron decision? Sure, and I think you're on a, makes a good, makes a good point earlier in that what, could the, could the board have said, in its case, not only is there waiver, but on top of that, we are interpreting the statute to say the regional director, even in a consent election, has this authority in the absence of a board quorum, and here's how we're interpreting the statute. If, if that's something that the board didn't do, but through, but didn't, I don't know that the board should be foreclosed from, in the first instance, rather than having this court, as an initial matter, shut down that line of cases, because there would be a lot of those cases. But, but what Srinivas is asking is, suppose we don't agree with that and think we shouldn't give the board another shot at Chevron deference because it chose not to do that, then what do we do? Right? I didn't understand the question to be that, but if that's the case, then I, I don't think that, I don't think that the Chevron deference, the lack of the board having cited Chevron deference. I know, but is Chevron deference critical to you succeeding here? I don't believe so, no. Okay, so why not? Because UCHealth and SSU Mystic, I think, make it very clear that in the absence of a delegate, I'm sorry, in the absence of a board quorum, the regional directors can continue to act. And we also do have, I would say that if the board wants to go down this road, and the court hasn't, and the board, I don't know. But not final authority. Yeah. Right, because I think the board then should, at the very least, first I would say I think it should be remanded to the board to address in the first instance, did you, do you feel that you have Chevron authority? We understand you didn't exercise it. Are you meaning that you don't think you have it? If the court disagrees and says, we're not going to give you that chance. You had it. You didn't do it. Then I think at the very least, we should be briefing the issue of what is the difference between a consent election then and UCMystic and SSU, sorry, UCHealth and SSU Mystic. And does it matter then on the Chevron deference that the consent election versus a stipulated election agreement. Okay. Okay, thank you. Did counsel have any time left? I'd like to briefly respond if I may. Wait, I just was asking first whether you had any time left. Yes, we do. Oh, you do? Okay. We've got you two minutes. Go ahead. Thank you very much. Yeah. I want to speak briefly about this idea of what should happen when the board's way for argument is ultimately rejected by this court as it should be under very clear precedent. The board suggests that it should get a second bite at the apple. That's unprecedented that we would just say to them, you didn't make the right arguments the first time. So let's just send it back to you so you can make some arguments that are compelling. That's ironic given their position on waiver and also just completely unsupported by precedent. What should clearly happen here is just like in Laurel Bay, the statute should be considered to be controlling. UC Health and Laurel Bay clearly interpret the statute for this court. Why do you say it's completely unprecedented? Because in UC Health, in footnote one, we said in UC Health that if all the board had done is said that its interpretation is compelled by the statute, then we would remand to give the board a chance to espouse an interpretation that then we'd make a Chevron determination. The board has never said that it's compelled by the statute. I know, but the hypothesis of that footnote is that there are situations in which something comes up and we say, well, the board hasn't yet given us an interpretation of the statute. And we usually like to have agency determinations, interpretations of statutes, because that's the normal course of how we do things. And then we can decide whether to defer to it. Our interpretation of footnote one is if the board had done that, then we would have said that the statute was clear and that they had an interpretation, then we would have given them the opportunity. I did not hear that argument today, and that argument is not in the briefs, and that argument is not in the letter of the supplemental authority. So it's the same situation as UC Health with regard to that. I'd also like to point out that even if we did apply Chevron, even if we did apply Chevron deference here, the boards got really no interpretation. But assuming for the sake of argument, they'd be advancing an argument that they had the regional directors in this manner, I think that is foreclosed in this circuit by the very clear language of UC Health and the very clear language of Laurel Bay. And for that reason, they're going to fail on Chevron deference. I even would go so far as to say that the brand X style of deference that you raised in your concurring opinion, they'd fail under that as well, because there's very clear, only permissible interpretation language that arises in Laurel Bay for these situations. So there is no standard under which the board can succeed here. Under this case, the certification is invalid, and the order has to be vacated. Thank you. Thank you. Case is submitted.
judges: Tatel, Kavanaugh, Srinivasan